**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ANN L. KOONTZ,

          Plaintiff,

v.                                            CIVIL ACTION NO. 2:10-cv-00864

WELLS FARGO, N.A.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Wells Fargo, N.A.'s motion to dismiss the complaint for failure to state a claim upon which relief may be granted [Docket 6]. For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

*I. FACTUAL BACKGROUND & PROCEDURAL HISTORY*

Plaintiff Ann L. Koontz ("Plaintiff") is a resident of Beckley, West Virginia. (Docket 1-2 at 5.) Defendant Wells Fargo, N.A. ("Wells Fargo") is a corporation headquartered in Iowa and doing business in West Virginia. (*Id.*) Sometime in 2003, Plaintiff responded to an online solicitation from Wells Fargo to finance the purchase of a residence located at 100 Glenn Avenue, Beckley, West Virgnia. (*Id.*) Plaintiff contacted Wells Fargo jointly with her then-husband, Bruce N. Richmond, and the pair co-signed an agreement with Wells Fargo to borrow $79,000 for the purchase of the Glenn Avenue residence. During an initial contact, Wells Fargo allegedly informed Plaintiff that, pursuant to a forthcoming financing agreement, the total monthly payment on the residence would be $614.00. (*Id.*) Wells Fargo also allegedly told Plaintiff that "although the

mortgage contained an adjustable interest rate . . . the interest rate would likely go down over time." (*Id.*)  At the June 5, 2003, closing Plaintiff first learned that her total monthly payment on the residence would be over $700.00.  (*Id.*)  Although not elaborated upon, Plaintiff's complaint states that the "closing was rushed and hurried, without sufficient explanation of the loan documents and loan terms," and she only continued with the loan closing because "it was too late to back out."  (*Id.*)

For the next six years, although Plaintiff's monthly loan payments increased to approximately $980.00, she managed to make payments according to the agreement with Wells Fargo.  (*Id.* at 6.)  In 2009, Plaintiff divorced her husband and was then unable to make payments under the agreement with Wells Fargo.  (*Id.*)  At that time, Plaintiff contacted Wells Fargo to request assistance.  Wells Fargo allegedly advised Plaintiff to apply for the Home Affordable Modification Program, took her financial information to fill out an application, and informed Plaintiff that the application process would take approximately three months, during which time she need not make mortgage payments.  (*Id.*)  Sometime thereafter, and presumably in late 2009, a "Mr. Windust" informed Plaintiff that she qualified for a trial-modification, which offered a lower monthly payment of $550.00 per month for three months.  (*Id.*)  According to "Mr. Windust," if Plaintiff successfully paid $550.00 per month for three months, the modification would become permanent, and Plaintiff's monthly payment would be permanently reduced to $550.00.  (*Id.*)  Although Plaintiff allegedly made three $550.00 payments in January, February, and March of 2010, Wells Fargo denied modification of Plaintiff's home loan.  (*Id.* at 7.)

In March 2010, shortly after receiving news that her modification was denied, Plaintiff again contacted Wells Fargo.  She was told to continue pursuing a modification, and she was assigned a new Wells Fargo representative with whom to work.  (*Id.*)  The new agent allegedly "assured


[Plaintiff] that her loan would be modified and directed [her] to again fill out loan modification paperwork and provide employment check stubs." (*Id.*) According to the complaint, the new Wells Fargo agent, like the first, instructed Plaintiff not to make any mortgage payments until the modification was approved. About one month later, on April 20, 2010, a foreclosure trustee contacted Plaintiff by letter to inform her that Wells Fargo was instituting foreclosure proceedings against Plaintiff. A foreclosure sale date was allegedly set for May 10, 2010. (*Id.*) Upon learning of the pending foreclosure sale, Plaintiff contacted Wells Fargo. (*Id.* at 8.) She was assured that the foreclosure letter was "just a formality" and that Wells Fargo had reached "no final decision regarding modification." (*Id.*) On April 30, 2010, the Wells Fargo representative with whom Plaintiff had been communicating informed her that her loan modification was denied. (*Id.*)

Over the next week, Plaintiff called Wells Fargo and the foreclosure trustee, attempting to determine the exact amount required to reinstate her loan and avoid foreclosure. (*Id.*) On May 8, 2010, Plaintiff received a letter from Wells Fargo that stated the foreclosure could be cancelled if Plaintiff executed an enclosed forbearance agreement and submitted the first installment payment. (*Id.*) Plaintiff's complaint states that the forbearance letter did not contain the amount of the required first payment, but Plaintiff executed the forbearance agreement nonetheless and returned it to Wells Fargo and the foreclosure trustee with no payment. (*Id.* at 8-9.) Plaintiff thereafter contacted the foreclosure trustee about the forbearance letter, but she was unsuccessful in halting the foreclosure on her home. (*Id.* at 9.) After the foreclosure sale, Plaintiff allegedly faxed a letter to Wells Fargo requesting a foreclosure review, and she was later told that a review would be performed. (*Id.*) According to the complaint, Wells Fargo never contacted Plaintiff with a decision regarding her requested foreclosure review. (*Id.* at 10.)

Plaintiff filed her complaint in the Circuit Court of Kanawha County, West Virginia, and Wells Fargo was served with process on May 28, 2010. (Docket 1 at 2.) On June 24, 2010, the action was removed to this Court, on the basis of diversity of citizenship. (*Id.* at 2-3.) Plaintiff asserts six counts in her complaint, most of which stem from the allegation that Wells Fargo assured Plaintiff that her loan would be modified but nonetheless pursued foreclosure. Count I alleges that the loan agreement contained unconscionable terms and was induced by unconscionable conduct. (Docket 1-2 at 10-11.) Count II alleges that Wells Fargo violated W. Va. Code § 46A-2-127 by making misrepresentations in the collection of a debt. (*Id.* at 11-12.) Counts III and IV are breach of contract claims, relating to the original loan agreement and the alleged oral agreement to reduce monthly payments to $550.00, respectively. (*Id.* at 12-14.) Count V is an estoppel claim, and Count VI is a negligence claim. (*Id.* at 14, 15.) Plaintiff requests actual and punitive damages, equitable relief, declaratory relief, and attorneys' fees. (*Id.* at 10-15.)

On August 2, 2010, Wells Fargo moved to dismiss the complaint for failing to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (Docket 6.) Wells Fargo asks the Court to dismiss Counts I through VI with prejudice because they fail to meet the pleading standards of Rule 8 and are otherwise legally deficient.

## II. APPLICABLE STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). This requirement is intended to ensure that the complaint provides "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiff's demonstration that

4

he is entitled to relief requires "more than labels and conclusions." *Id.* In other words, "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008). Nonetheless, the complaint must only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (stating that the complaint "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). All of the facts alleged in the complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Federal Rule of Civil Procedure 12(b)(6) permits a Wells Fargo to challenge the complaint as "fail[ing] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept the allegations in the complaint as true. *Twombly*, 550 U.S. at 555. Likewise, the Court is required to draw "all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178, F3d 231, 244 (4th Cir. 1999). Therefore, a motion to dismiss under Rule 12(b)(6) should be granted only if, after accepting all well-pleaded allegations contained in a complaint as true and drawing all reasonable inferences therefrom in the plaintiff's favor, the complaint fails to allege enough facts to state a claim that is plausible on its face. *See Twombly*, 555 U.S. at 555, 570.

### III. ANALYSIS

*A. Count I: Unconscionable Contract and Conduct*

In moving to dismiss Count I, Wells Fargo contends that "Plaintiff has alleged no facts that support her claim that the loan was induced by unconscionable conduct or included unconscionable terms." (Docket 7 at 10.) In response, Plaintiff argues that she has "provide[d] more than sufficient

facts to. . . [meet the] standard of Rule 8." (Docket 9 at 7.) In particular, Plaintiff points to three excerpts of the complaint as adequate to state a claim for unconscionable conduct or unconscionable contract terms. First, Plaintiff "alleges that she is unsophisticated in financial matters, while Wells Fargo . . . is a large national corporation." (*Id.* at 8; Docket 1-2 at 5, 10.) Second, Plaintiff alleges that "[t]he closing was rushed and did not give [Plaintiff] an opportunity to understand the complicated legal documents she was signing." (Docket 9 at 8; Docket 1-2 at 5.) Third, Plaintiff alleges that Wells Fargo misrepresented the total monthly payment under the contract and misrepresented "that this monthly payment would likely decrease over time." (Docket 9 at 8; Docket 1-2 at 5, 10.) In fact, as is the case with many home mortgages, the interest rate in the contract was fixed at its base for the first three years, and it could only remain constant or, more likely, increase over time. (Docket 1-2 at 5, 11.)

West Virginia Code § 46A-2-121 provides the remedy for consumers who have entered into consumer loans either containing unconscionable terms or induced by allegedly unconscionable conduct. It states, in pertinent part:

> (1) With respect to a transaction which is or gives rise to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds:
>
>> (a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or
>>
>> (b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of an unconscionable term or part as to avoid any unconscionable result.
>
> (2) If it is claimed or appears to the court that the agreement or transaction or any term or part thereof may be unconscionable, *the parties shall be afforded a*

> *reasonable opportunity to present evidence* as to its setting, purpose and effect to aid the court in making its determination.

W. Va. Code § 46A-2-121 (emphasis added). As is clear from § 46A-2-121(2), in West Virginia "[u]nconscionability claims should but rarely be determined based on the pleadings alone." *Mallory v. Mortgage Am., Inc.*, 67 F. Supp. 2d 601, 612 (S.D. W. Va. 1999) (citing *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 292 (4th Cir. 1989)). Instead, when it is claimed that a contract or any clause thereof may be unconscionable, "the parties should be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court." *Id.* Against this backdrop, the Court is constrained to conclude that Plaintiff has alleged facts sufficient to demonstrate that the unconscionable conduct claim is plausible on its face. *See Twombly*, 550 U.S. at 570.

"Whether a particular term in a contract is unconscionable often depends on the circumstances in which the contract was executed or the fairness of the contract as a whole, and therefore [the] analysis necessarily includes an inquiry beyond the face of the contract." *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 753 (W. Va. 1986). West Virginia courts further instruct that the unconscionability determination "must focus on the relative positions of the parties, the adequacy of the bargaining positions, and the meaningful alternatives available" to the plaintiff. *Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co.*, 413 S.E.2d 670, 675 (W. Va. 1991); *see also Hager v. Am. Gen. Fin., Inc.*, 37 F. Supp. 2d 778, 786 (S.D. W. Va. 1999). Succinctly stated,

> gross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion or may show that the weaker party had no meaningful, no real alternative, or did not in fact assent or appear to assent to the unfair terms.

*Troy Mining Corp.*, 346 S.E.2d at 753 (quoting Restatement (Second) of Contracts § 234 cmt. d (1970)).

In support of Count I, Plaintiff states (1) that she is "an unsophisticated consumer" who knows little about financial matters; (2) that the closing "was rushed and hurried," but that Plaintiff executed the contract nonetheless "because it was too late to back out"; and (3) that Plaintiff "was induced into the contract by Wells Fargo's misrepresentations of the terms of the contract, including that the interest rate would likely decrease over time." (Docket 1-2 at 10.) In further support of this last allegation, the complaint states that Wells Fargo told Plaintiff "that although the mortgage contained an adjustable interest rate, . . . the interest rate would likely go down over time." (*Id.* at 5.) Resolving all inferences in favor of Plaintiff, the Court cannot conclude that Plaintiff has failed to state an unconscionable conduct claim.

To begin with, Plaintiff has raised sufficient factual allegations to demonstrate a gross inadequacy of bargaining power. She alleges that she is unsophisticated in financial matters, and the complaint identifies Wells Fargo as a large, national lending institution. (*Id.* at 4.) These allegations, taken in the light most favorable to Plaintiff, raise a question as to the parties' relative bargaining positions. *See Arnold v. United Companies Lending Corp.*, 511 S.E.2d 854, 861 (W. Va. 1998) (national corporate lender and unsophisticated, uneducated consumers is a "great disparity in bargaining power"). Furthermore, allegations that the closing was "rushed and hurried" so that Plaintiff went "without a sufficient explanation of the loan documents and loan terms" ring of compulsion, another indicator of unconscionable conduct. *See Troy Mining Corp.*, 346 S.E.2d at 753. This notion is bolstered by Plaintiff's allegation that she felt it "was too late to back out." Again, drawing all inferences in favor of Plaintiff, the complaint suggests that the closing was

8

pressured, compelled, or urged by Wells Fargo. Additionally, and most forcefully, Plaintiff expressly alleges that Wells Fargo induced her to sign the agreement by misrepresenting the nature of the contract's adjustable interest rate. This allegation sufficiently avers that "the transaction involved elements of deception," *Troy Mining Corp.*, 346 S.E.2d at 753, and it is independently supported by ample facts. Plaintiff has thus raised sufficient factual allegations to show that her unconscionable conduct claim is plausible on its face. *See Twombly*, 550 U.S. at 570. Wells Fargo's motion to dismiss Count I is therefore **DENIED**.

*B. Count II: Illegal Debt Collection*

Count II simply states that "Wells Fargo . . . made misrepresentations in the collection of a debt, in violation of West Virginia Code § 46A-2-127." (Docket 1-2 at 11.) The Court is left to guess which portion or portions of the complaint Plaintiff is referring to in Count II. Fortunately, Plaintiff's responsive memorandum identifies two alleged misrepresentations that potentially meet the statute's parameters. First, Plaintiff states that Wells Fargo "misrepresented that it was providing her with a loan modification, [sic] in order to collect additional money from Plaintiff through a trial modification." (Docket 9 at 10.) This allegation refers to paragraphs 14 and 15 of the complaint, which state:

> 14. Thereafter, Mr. Windust informed [Plaintiff] that she qualified for a lower monthly payment of $550.00 a month for a three-month trial period. He further stated that if she paid the trial monthly payments for three months, her loan payment would be permanently modified to $550.00 a month.
>
> 15. [Plaintiff] paid the $550.00 monthly payment in January, February and March of 2010 as instructed.

(Docket 1-2 at 6.) Second, Plaintiff states that "Wells Fargo misrepresented that she was being considered for a loan modification and that she should refrain from making payments [while the

9

modification was pending]." (Docket 9 at 10.) Once the loan modification was denied, Plaintiff alleges that Wells Fargo misrepresented that it would again "consider[] her for a loan modification and thereby obtained additional information concerning her, through repeated loan modification applications." (*Id.*)

Wells Fargo first challenges Count II by arguing that, because the alleged misrepresentations are not "debt-collection-related communications," they cannot proceed as a matter of law. (Docket 7 at 11.) This argument is wisely discarded in Wells Fargo's reply, where it acknowledges that W. Va. Code § 46A-2-127 applies to both "misrepresentations made in collecting a debt" and "misrepresentations . . . [made] when obtaining information on a customer." (Docket 11 at 4.) Wells Fargo maintains, however, that neither of Plaintiff's allegations meet the statute's requirements because the alleged misrepresentations were neither made in the course of collecting a debt nor when obtaining information on a customer. (*Id.* at 4-5.)

Plaintiff's first allegation fails to attribute the misrepresentation to Wells Fargo at all. Plaintiff refers to paragraph 14 of the complaint, which describes an allegedly false statement to Plaintiff by a "Mr. Windust" (Docket 1-2 at 6). Curiously, this is the only mention of "Mr. Windust" in the complaint. However, drawing all inferences in favor of Plaintiff, as it must, the Court assumes "Mr. Windust" to be an employee or agent of Wells Fargo.[1] Therefore, to the extent that the complaint goes on to allege that the $550-per-month trial modification was merely a ploy by Wells Fargo to obtain partial payment of Plaintiff's outstanding debt, it sets forth a claim pursuant to W. Va. Code § 46A-2-127. In addition, to the extent that Plaintiff alleges Wells Fargo

---

[1] Although the complaint does not expressly identify "Mr. Windust" as an employee or agent of Wells Fargo, it implies as much by attributing the same conversation to "Mr. Windust" in paragraph 14 and Wells Fargo in paragraph 53.

10

misrepresented that it would reconsider her for a loan modification, and thereby obtained financial information for a second modification application, the complaint adequately sets forth a claim pursuant to W. Va. Code § 46A-2-127. Both allegations are supported by facts adequate to meet the demands of *Twombly* and *Iqbal*, and the motion to dismiss Count II is therefore **DENIED**.

*C. Count III: Breach of Contract & Duty of Good Faith and Fair Dealing*

In Count III, Plaintiff asserts two claims under the heading "Breach of Contract (Deed of Trust)": an express breach of contract claim and a claim that Wells Fargo breached the implied covenant of good faith and fair dealing. In furtherance of these claims, Plaintiff contends that Wells Fargo "breached its duties under the [deed of trust], including its duties to exercise its discretion in good faith . . . by . . . (a) discouraging Plaintiff from providing payments to her account; (b) assuring Plaintiff that [Wells Fargo] was working out a loan modification and simultaneously referring the home to foreclosure; and (c) failing to provide Plaintiff with the proper notices required by contract regarding her right to cure and the date of foreclosure sale . . . ." (Docket 1-2 at 12-13.) Wells Fargo challenges all three bases for the claims in Count III, as well as some arguments outside the complaint.

*1. Express Breach of Contract*

Only the last of the three bases for Count III relates to a specific contractual provision, and therefore may constitute an express breach of the deed of trust. Wells Fargo contends that there is no merit to subparagraph (c), stating simply that it did send the required notices to Plaintiff and thereby complied with all contractual duties. (Docket 7 at 15-16.) In furtherance of the argument, Wells Fargo attached two notice letters to its motion to dismiss the complaint, both of which purportedly satisfy the contractual provision at issue in Count III. (Docket 6-2 at 1-4.) Although

11

Wells Fargo acknowledges that the Court is confined to regard factual allegations in the complaint as true, it urges the Court to consider the notices attached to the motion to dismiss.

Generally, external evidence is not to be considered in resolving a motion to dismiss the complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(d) (receipt of outside materials converts Rule 12(b)(6) motion to Rule 56 motion); *Watkins v. Wells Fargo Bank*, No. 3:10-cv-1004, 2011 WL 777895, at *3 (S.D. W. Va. Feb. 28, 2011). The Fourth Circuit has recognized an exception to this general rule, providing that "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). In this case, Plaintiff did not cite to the attached notices in her complaint. Instead, the complaint states that Wells Fargo failed to provide Plaintiff with notices as contemplated in the deed of trust. Furthermore, in her response to Wells Fargo's motion to dismiss, Plaintiff expressly disputes that the attached notices were ever mailed. (Docket 9 at 12.) Thus, if the Court is to consider the attached notices at all, it must do so in the context of a motion for summary judgment brought under Rule 56 of the Federal Rules of Civil Procedure. However, "[s]uch conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, ___ F.3d ___, 2011 WL 834658, at *9 (4th Cir. Mar. 11, 2011) (citing *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985)). Additionally, "when, on a motion to dismiss under [Rule] 12(b)(6), matters outside the pleadings are to be considered, '[a]ll parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" *Plante v. Shivar*, 540 F.2d 1233, 1234-35

(4th Cir 1976) (quoting Fed. R. Civ. P. 12(d)). Here, Plaintiff has not been afforded the opportunity to present material pertinent to a Rule 56 motion on this issue, nor has she had the opportunity to conduct reasonable discovery. The Court therefore declines to consider Wells Fargo's exhibits at the Rule 12(b)(6) stage of the case, and accordingly **DENIES** the motion to dismiss the express breach of contract aspect of Count III.

*2. Breach of Implied Covenant of Good Faith and Fair Dealing*

Plaintiff additionally alleges that Wells Fargo breach the implied covenant of good faith and fair dealing by (1) discouraging Plaintiff from providing partial payments to her account during the pendency of her modification application and (2) assuring Plaintiff that her loan modification was being processed, while simultaneously referring her home to foreclosure. (Docket 1-2 at 12-13.)

West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract." *Stand Energy Corp. v. Columbia Gas Transmission*, 373 F. Supp 2d 631, 644 (S.D. W. Va. 2005) (quoting *Hoffmaster v. Guiffrida*, 630 F. Supp. 1289, 1291 (S.D. W. Va. 1986)). "[T]he West Virginia Supreme Court of Appeals has, however, 'declined to recognize an independent claim for a breach of the common law duty of good faith,' and has instead held that such a claim sounds in breach of contract." *Corder v. Countrywide Home Loans, Inc.*, No. 2:10-cv-0738, 2011 WL 289343, at *3 (S.D. W. Va. Jan. 26, 2011) (quoting *Doyle v. Fleetwood Homes of Va.*, 650 F. Supp. 2d 535, 541 (S.D. W. Va. 2009)); *see also Highmark W. Va., Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007) ("[I]t has been held that an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim."). Furthermore, "[t]he implied covenant of good faith and fair dealing cannot give

contracting parties rights which are inconsistent with those [expressly] set out in the contract." *Barn-Chestnut, Inc. v. CFM Dev. Corp.*, 457 S.E.2d 502, 509 (W. Va. 1995).

Wells Fargo argues that the complaint fails to state a claim because "initiation of foreclosure proceedings where there is an admitted default cannot constitute a breach of the implied covenant of good faith and fair dealing." (Docket 11 at 5.) Wells Fargo contends that under the deed of trust, in the case of default, it has absolute discretion to choose between pursuing modification of the loan or foreclosing on the borrower's property. As a matter of law, continues Wells Fargo, exercise of that express contractual right cannot be impeded by the covenant of good faith and fair dealing, and Wells Fargo cannot therefore be compelled to modify Plaintiff's home loan. (Docket 7 at 13-15.)

This line of argument is, frankly, a strawman. The Court does not disagree with Wells Fargo on this point, but recognizes that Plaintiff's complaint puts forth no such theory. Instead, Plaintiff contends that, in exercising its contractual discretion to modify or foreclose, Wells Fargo was confined (by the covenant of good faith and fair dealing) to act toward her in a commercially reasonable manner. The complaint goes on to identify, with the necessary factual specificity, two of Wells Fargo's alleged practices that may amount to dealing in bad faith—discouraging partial payments and covertly pursuing foreclosure while assuring Plaintiff of a pending modification. Importantly, these alleged bad faith actions are related to the express breach of contract claim, also in Count III. All three allegations involve the actions of Wells Fargo in exercising its discretion to modify or foreclose, whether in communications about the status of Plaintiff's modification application or contractually-required notices regarding Plaintiff's right to cure the default and prevent foreclosure. Accordingly, the Court **DENIES** the motion to dismiss Count III of the complaint as it relates to the covenant of good faith and fair dealing.

14

*D. Count IV: Breach of Payment Plan*

Plaintiff's second breach of contract claim, asserted in Count IV, alleges that Wells Fargo breached an oral contract the parties reached and Plaintiff at least partially performed. In particular, Plaintiff states that "Wells Fargo promised that [Plaintiff's] loan payment would be permanently modified to $550.00 a month if she paid $550.00 a month in loan payments for a three-month trial period" and "[a]s instructed, [Plaintiff] paid $550.00 for her loan payment in January, February, and March of 2010." (Docket 1-2 at 13.) Despite this, alleges the complaint, Wells Fargo denied the permanent modification. Wells Fargo challenges Count IV by asserting that "Plaintiff does not provide facts as to when this alleged contract was entered into between the parties and forces Wells Fargo to guess as to what 'contact' [sic] Plaintiff is referring." (Docket 7 at 16.) Wells Fargo goes on to comment that the "Mr. Windust" referred to in an earlier paragraph of the complaint is otherwise unidentified, so that any communication regarding a permanent modification cannot be attributed to Wells Fargo, and Count IV is therefore deficient. (Docket 11 at 7.) Moreover, Wells Fargo appears to argue that the statute of frauds necessitates dismissal of Count IV insofar as it refers to an oral contract.

First, although the complaint fails to set forth an exact date on which the alleged conversation in paragraphs 14 and 53 took place, the complaint in its entirety alleges that the conversation occurred in (probably late) 2009, and Plaintiff performed in the first three months of 2010. (Docket 1-2 at 6, 13.) Additionally, although the complaint does not expressly identify "Mr. Windust" as an employee or agent of Wells Fargo, it implies as much by attributing the conversation to "Mr. Windust" in paragraph 14, then attributing the same conversation to Wells Fargo in

15

paragraph 53. (*Id.* at 6, 13.) Drawing all reasonable inferences in favor of Plaintiff, as the Court must at the Rule 12(b)(6) stage, Wells Fargo's first argument must fail.

Second, affirmative defenses, such as the statute of frauds, may be raised in a Rule 12(b)(6) motion to dismiss, but "for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings." *Blackstone Realty, LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001) (internal quotation marks omitted); *see also T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan, LLC*, 285 F.3d 836, 841-42 (4th Cir. 2004). "However, dismissal under 12(b)(6) is appropriate only if the plaintiff can prove no set of facts that would support its claims." *T.G. Slater & Son*, 244 F.3d at 841. The statute of frauds generally prevents enforcement of certain oral contracts unless specific conditions are met. *E.g.*, *Timberlake v. Helflin*, 379 S.E.2d 149, 153 (W. Va. 1989). "[T]he underlying purpose of [the] statute of frauds is 'to prevent the fraudulent enforcement of unmade contracts, not the legitimate enforcement of contracts that were in fact made.'" *Hoover v. Moran*, 662 S.E.2d 711, 719 (W. Va. 2008) (quoting *Timberlake*, 379 S.E.2d at 153). Under West Virginia law, there are several ways in which a contract that does not satisfy the statute of frauds may still be enforced. These circumstances include partial performance of an oral contract and fraud. *See, e.g.*, *Fry Racing Enters., Inc. v. Chapman*, 497 S.E.2d 541, 545 (1997) (partial performance); *Bennett v. Charles Corp.*, 226 S.E.2d 559, 563 (W. Va. 1976 ("[A] defendant may be estopped to assert the Statute of Frauds in defense of an action for enforcement where certain limited circumstances exist . . . includ[ing] fraud and part performance."). More specifically, the West Virginia Supreme Court of Appeals has held that "courts of equity will, notwithstanding the statute of frauds, enforce oral contracts . . . which have been partially performed," under certain conditions. *Fry Racing Enters.*, 497 S.E.2d at 545 (quoting *Kimmins v.*

*Oldham*, 27 W. Va. 258 (1885) (S.E.2d citation unavailable)). The conditions required under West Virginia law are (1) "the right sought to be enforced or safeguarded must be clear and definite" and (2) it must be "evidenced by such part performance as will justify a court of equity in deviating" from the statute of frauds. *Gibson v. Stalnaker*, 106 S.E. 243, 245 (W. Va. 1921) (citations omitted).

Plaintiff's complaint alleges both the existence of a definite agreement and that Plaintiff fully performed her side of the alleged agreement. The complaint further indicates that Plaintiff's payments were accepted by Wells Fargo. Viewing these allegations in the light most favorable to Plaintiff, the complaint states a claim for breach of contract on which relief could be granted, even in the absence of a writing. In light of the foregoing discussion, Wells Fargo's motion to dismiss Count IV of the complaint must be **DENIED**.

*E. Count V: Equitable Estoppel*

Defendant next contends that the estoppel claim in Count V "is not a separate cause of action but instead is a request for equitable relief for [the] second putative cause of action, for alleged misrepresentation in debt collection." (Docket 7 at 17.) West Virginia law recognizes an independent claim for equitable estoppel. *See Harshbarger v. CSX Transp., Inc.*, 484 F. Supp. 2d 515, 517 (S.D. W. Va. 2007) (citing *Cleaver v. Big Arm Bar & Grill, Inc.*, 502 S.E.2d 438 (W. Va. 1998)). To prove equitable estoppel, the West Virginia Supreme Court of Appeals has stated:

> [1] [t]here must exist a false representation or a concealment of material facts; [2] it must have been made with knowledge, actual or constructive, of the facts; [3] the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; [4] it must have been made with the intention that it should be acted on; and [5] the party to whom it was made must have relied on or acted on it to his prejudice.

*Folio v. City of Clarksburg*, 655 S.E.2d 143, 148 (W. Va. 2007) (quoting Syl. Pt. 6, *Stuart v. Lake Washington Realty Corp.*, 92 S.E.2d 891 (W. Va. 1956)).

In support of her equitable estoppel claim, Plaintiff's complaint alleges: (1) Wells Fargo's agents represented to her that Wells Fargo would modify her loan rather than pursue foreclosure, and instructed her not to make payments in the interim; (2) in reliance on those representations, Plaintiff did not make payments on the loan; (3) Plaintiff had a reasonable expectation that Wells Fargo would provide her with a loan modification rather than foreclose, as promised; and (4) Plaintiff was injured by her reliance on Wells Fargo's representation. (Docket 1-2 at 14.) The Court liberally construes these allegations to assert that Wells Fargo's agents made knowingly false statements of material fact to Plaintiff about pursuing a modification rather than foreclosure. The Court also liberally construes the allegations to assert that Plaintiff had no means of knowing that Wells Fargo was pursing foreclosure, that Wells Fargo made the alleged misrepresentations intending Plaintiff to make partial payments, and that Plaintiff relied to her detriment on Wells Fargo's misrepresentations and paid the trial-modification sums. *See generally Corder v. Countrywide Home*, 2011 WL 289343, at *8 (similar allegations construed liberally to state claim for estoppel). In short, the Court **FINDS** that Plaintiff has sufficiently pled a claim for equitable estoppel under West Virginia law and thus **DENIES** Wells Fargo's motion to dismiss Count V.

*F. Count VI: Negligence*

In Count VI, Plaintiff claims that, by misrepresenting the status of her loan and failing to provide required notices, Wells Fargo breached its duty "to provide . . . accurate information about the status of [Plaintiff's] loan account and to provide accurate notice of any foreclosure action." (Docket 1-2 at 15.) These actions, alleges Plaintiff, amount to common law negligence. In its motion to dismiss, Wells Fargo argues that Plaintiff cannot state a claim for negligence predicated on contractual duties, and Count VI must therefore be dismissed. (Docket 11 at 8.) The Court agrees.

18

In West Virginia, a plaintiff "cannot maintain an action in tort for an alleged breach of a contractual duty." *Lockhart v. Airco Heating & Cooling*, 567 S.E.2d 619, 624 (W. Va. 2002). Instead, "[t]ort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law *because of the relationship of the parties*, rather than from a mere omission to perform a contract obligation. *Id.* (emphasis added). The West Virginia Supreme Court of Appeals has referred to this relationship as a "special relationship" between the parties. *See, e.g.*, *Aikens v. Debow*, 541 S.E.2d 576, 589 (W. Va. 2000). "The existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general." *Id.* "In the lender-borrower context, courts consider whether the lender has created such a 'special relationship' by performing services not normally provided by a lender to a borrower." *Warden v. PHH Mortgage Corp.*, No. 3:10-cv-00075, 2010 WL 3720128, at *9 (N.D. W. Va. Sept. 16, 2010) (citing *Glascock v. City Nat'l Bank of W. Va.*, 576 S.E.2d 540, 545-56 (W. Va. 2002)).

As in *Warden*, Plaintiff fails to allege that Wells Fargo provided a service not normally provided by a lender in its position. For example, Plaintiff alleges that Wells Fargo accepted monthly mortgage payments, engaged in a temporary loan modification, denied a permanent loan modification, and ultimately foreclosed on her property. These are actions and services normally transpiring between a loan servicer and a borrower. As such, Plaintiff has failed to plead a special relationship that would create an independent duty sounding in tort. The only remaining duties between the parties are contractual, and they cannot provide the basis of a negligence action. Accordingly, the Court **FINDS** no independent legal duty of care to support an action for negligence under the facts alleged and therefore **GRANTS** Wells Fargo's motion to dismiss Count VI of the complaint.

## IV.  CONCLUSION

For the foregoing reasons, Wells Fargo's motion to dismiss the complaint [Docket 6] is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** as to Count VI only, and Count VI of the complaint is therefore **DISMISSED**.  The motion is **DENIED** as the remaining five counts.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 31, 2011

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE